EMERSON PHONOGRAPH COMPANY, INC., Respondent, *v.* HENRY WATERSON, Appellant.

First Department, May 31, 1918.

Contract — alleged agreement to pay part of profits in consideration of plaintiff's procuring selling agency for defendant — evidence not establishing contract.

Action on an alleged verbal contract whereby the defendant agreed to pay the plaintiff's assignor a portion of the profits resulting from the sale of certain phonograph records in consideration of the assignor's assistance in procuring for the defendant the exclusive selling agency of said records. The only direct testimony as to the making of the contract was that of the plaintiff's assignor.

Evidence examined, and *held,* insufficient to establish the contract alleged by the plaintiff and that the complaint should be dismissed.

SMITH, J., dissented from dismissal of complaint but concurred in reversal.

APPEAL by the defendant, Henry Waterson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of October, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Charles H. Tuttle* of counsel [*Max D. Josephson*, attorney], for the appellant.

*Walter Carroll Low*, for the respondent.

MERRELL, J.:

The plaintiff, respondent, a domestic corporation, has recovered a verdict against the defendant for the sum of $46,485.59, upon which judgment has been entered. The action is based upon an alleged verbal contract which plaintiff claims was entered into between one Victor H. Emerson, plaintiff's assignor, and the defendant, in July, 1914, whereby it is claimed defendant agreed that if Emerson would assist him in procuring a contract with the American Graphophone Company, a corporation, for the exclusive selling agency of so-called " Little Wonder " phonograph records, the defendant would pay to the plaintiff's said assignor one-half of the net profits in any manner resulting to the defendant from or by reason of such contract, whether from the sale of said records or otherwise, the defendant agreeing to pay royalties not exceeding one-half a cent per record. In its complaint plaintiff further alleges that Emerson had assisted and was instrumental in procuring such contract between the American Graphophone Company and the defendant whereby the defendant obtained the exclusive selling agency of said records for the period of five years. Plaintiff further alleges that during the continuance of such contract for the period of one year, ten months and seventeen days defendant reaped a profit of $200,000. Plaintiff further claims that subsequent to the making of such verbal contract Emerson assigned to one Miles R. Bracewell an interest therein, which interest is quite indefinite and dependent upon the will of Emerson as to its extent; that thereafter and on March 22, 1916, Emerson and Bracewell, by an instrument in writing which they jointly executed, assigned and transferred unto the plaintiff all their right, title and interest in said contract and the moneys then or thereafter to become due from defendant thereunder. It is further alleged that due demand upon the defendant has been made for the payment of one-half of the net profit of $200,000 which had been refused, and

First Department, May, 1918.                    [Vol. 183.

that no part thereof has been paid, except the sum of $1,750, alleged to have been paid by defendant to Emerson on account thereof.  Judgment is demanded in the complaint in the sum of $100,000 and interest.

Pursuant to defendant's demand, plaintiff furnished a bill of particulars wherein it is specified that the alleged agreement was oral, and was in substance as stated in the complaint. Defendant denies the making of the contract alleged in the complaint, and upon which plaintiff's recovery is based.  It is, therefore, of primary importance to determine whether or not Emerson and the defendant entered into the contract in question.  The court correctly charged the jury that unless plaintiff was able to establish the contract no recovery could be had.

Plaintiff attempts to establish the contract in question by the testimony of Victor H. Emerson, its assignor.  Emerson testified that in July, 1914, he was employed as superintendent of the record-making department of the Columbia Phonograph Company of New York city; that his duties consisted of master record reporting and making arrangements with singers, bands, orchestras and other talent, and in making the master or wax records.  He was also engaged to some extent as a side line in perfecting inventions in connection with his employment of making master records. He was neither an officer nor a director of the company. Emerson testifies that in the month of July, 1914, he had a conversation with the defendant at the latter's office, and that on that occasion he told defendant that the American Graphophone Company, of which the Columbia Phonograph Company was a subsidiary company, was about to put out a small record, of about five and one-half inches diameter, to be sold for ten cents, and that it seemed to him there was a large commercial field in connection therewith, and that he thought it possible to obtain for the defendant a contract. to dispose of said records exclusively.  Emerson testified that at the request of the defendant he showed him one of the small records, and that the defendant became enthusiastic over the same, and that future conferences were arranged and had between them with reference thereto; that they figured upon the possibilities of disposing of the cheap records

to Woolworth and other five and ten-cent stores, and that defendant finally said to him: " Emerson, if you can get that contract for me, we can make it clean up — make at least a half a million a year apiece." Emerson further testified that they figured and discussed the question of royalties to be paid, and that the defendant said: " I can and will get these copyright selections for a half cent; there will be no profit in it without that." Subsequently, Emerson testified that he took Waterson, the defendant, to see a Mr. Lyle, an official of the American Graphophone Company, and that a proposed contract whereby defendant was to be given the exclusive sales agency of the " Little Wonder " records was discussed, and apparently a tentative understanding was reached that defendant should be given such agency. Subsequently, Emerson testifies, at the request of Mr. Lyle, he carried a contract which had been prepared to Saratoga, where Mr. Waterson then was, and there, as he says, in behalf of the graphophone company, negotiated with defendant as to the terms and conditions of the contract. Emerson testifies that the contract was practically rewritten at Saratoga, was executed by Waterson, and brought back to New York, and finally executed by the American Graphophone Company. It is upon this testimony of Emerson as to the alleged agreement that defendant should share with him the net profits, that plaintiff bases its claim to the verdict which it has obtained. No other direct testimony appears in the record of the making of the contract which plaintiff claims.

As corroborative of the alleged oral agreement whereby Emerson was to receive one-half of the profits in consideration of his getting from the graphophone company the desired contract, plaintiff swore Bracewell, who claimed to have acquired, by verbal assignment from him, an interest in the contract with the defendant. Bracewell testified that on an occasion at Rector's, Forty-eighth street and Broadway, in December, 1914, he had a conversation with the defendant; that Emerson, who had been present a short time before, had stepped out, and that he, Bracewell, made a remark to the defendant referring to Emerson, that " there was one white fellow, or something to that effect," and that he hoped that he (meaning Emerson) would make a whole lot of money.

out of the " Little Wonder " records, and that the defendant had replied to him that within a very short time he, Emerson, would be getting several thousand dollars a week from them. Bracewell testified that in response he had stated to defendant that he certainly hoped that was so, as he, Bracewell, was interested in it, and that defendant replied: " That it made no difference what Mr. Emerson did with his half."

In further claimed corroboration of the alleged verbal agreement upon which plaintiff bases its recovery, Frank L. Capps, superintendent of record manufacture for the Columbia Phonograph Company at Bridgeport, Conn., was sworn.   He testified as to acquaintance with both Emerson and Waterson, and that in the fall of 1914, at Bridgeport, he had a conversation with Waterson and Emerson, who had come to his factory, and that on that occasion he had expressed to them the hope that Emerson would get something out of the " Little Wonder " records, and that Waterson had said: " That is all right, he is in with me."

These two items of testimony, claimed by plaintiff to be corroborative of its claim of the contract between Emerson and Waterson, would be important if, in fact, any contract had been proven.   But it seems to me, as before stated, the testimony falls far short of establishing any definite or mutual contract between Emerson and Waterson.   The most Emerson testifies is that Waterson stated to him: " Emerson, if you can get that contract for me, we can make it clean up — make at least a half a million a year apiece."   And the other statement of Waterson: " I can and will get these copyright selections for a half cent; there will be no profit in it without that."   I do not think these two expressions of Waterson are sufficient to constitute a binding agreement on his part to pay to Emerson one-half of the net profits arising out of his contract with the American Graphophone Company.   At most, his words constituted a prediction that if Emerson could get the contract for him a large profit would result therefrom.   Under the terms of the contract which Waterson finally entered into with the graphophone company he agreed to order and take from the company its output of small records up to a quantity of 500,000 per week, and to pay the company six cents per record for all records containing

a copyrighted composition, and six and one-third cents per record for all records ordered and delivered on non-copyrighted musical compositions. These records were sold by Waterson at seven cents each, the profit thereon being a cent or two-thirds of a cent on each record sold, exclusive of royalties on copyrighted compositions, all of which royalties were to be paid by Waterson. Prior to the assignment of his claim in the alleged contract with Waterson, and in May, 1915, Emerson himself brought action against the defendant to recover his alleged half of the profits which he claimed had then been obtained by defendant under the latter's contract with the American Graphophone Company, Emerson then claiming his share in such profits amounted to $50,000. In his complaint in that action no allegation was made as to defendant's agreement to pay royalties not exceeding one-half cent per record. When that action came on for trial it appeared that Waterson had paid royalties in connection with obtaining the compositions exceeding any profit which he obtained in the disposition of the records. Shortly before the case came to trial Waterson was examined, and thereby Emerson apparently became convinced that he could not establish any cause of action for the reason that there were no apparent net profits to divide, and at request of his counsel the complaint in that action was dismissed, the case proceeding to trial under a counterclaim set up by Waterson for money which he alleged he had loaned and advanced to Emerson. The trial resulted in a verdict in favor of Waterson and against Emerson for the sum of $1,600. The complaint in the present action is substantially a repetition of that in the first action with the addition of the allegation that the defendant, as a part of his contract with Emerson, agreed that the royalties which he was to pay should not exceed one-half cent per record. This added allegation is very significant, and was apparently interposed for the purpose of creating an artificial profit in which plaintiff seeks to share. Emerson, while admitting that the portion of the contract as to the limitation of royalties to be paid by Waterson at one-half cent per record was a vital one, attributes his omission to allege that feature in his original complaint to the failure of his counsel to inquire of him with reference

thereto, and states that he did not inform his counsel of that feature of the contract at the time the first complaint was framed. Upon the first trial Emerson testified as to the alleged contract: " He said, ' Emerson, if you can pull this thing off for me' he could clean up half a million dollars a · year on this thing." On the present trial Emerson furnished the additional testimony: " I can and will get these copyright selections for a half cent; there will be no profit in it without that."

In addition to the position that the evidence does not establish any definite or mutual contract between the parties, appellant urges several other reasons why the judgment appealed from should be reversed. Among others, that Emerson, at the time he claims to have made the verbal agreement with defendant to share the profits on the latter's contract which he was to procure for him with the graphophone company, was a trusted employee of said company, and that his alleged contract was in breach of trust and void as against public policy. It is also urged, not without considerable force, that plaintiff's action is prematurely brought, and that there cannot be any recovery under the alleged contract until its final termination. However, if we are correct in our view that no valid, definite or mutual contract has been established, it is unnecessary to consider the other grounds urged for reversal.

The judgment and order appealed from should be reversed, with the costs and disbursements of the appeal, and the complaint dismissed, with costs to the appellant.

CLARKE, P. J., DOWLING and PAGE, JJ., concurred; SMITH, J., dissented from dismissal of complaint.

SMITH, J. (dissenting in part):

I concur in the reversal of the judgment, but dissent from the dismissal of the complaint and vote for a new trial.

Judgment and order reversed, with costs, and complaint dismissed, with costs.